UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALVARO MENDEZ-GARCIA,

    Plaintiff,

v.                                                     Case No.  8:10-cv-788-T-24 EAJ

GALAXIE CORPORATION,

    Defendant/Third-Party Plaintiff,

v.

NANOTEC METALS, INC.

    Third-Party Defendant.
_____/

**ORDER**

This cause comes before the Court on cross motions for summary judgment (Doc. Nos. 52, 57), and respective responses in opposition (Doc. Nos. 64, 65). For the reasons stated below, Third-Party Defendant Nanotec Metals Inc.'s Motion for Summary Judgment (Doc. No. 57) is granted, and Third-Party Plaintiff Galaxie Corporation's Motion for Partial Summary Judgment (Doc. No. 52) is denied.

**I.    Background**

The dispute between Galaxie and Nanotec ("Parties") arises from the primary action in this case, in which Plaintiff Alvaro Mendez-Garcia, a Nanotec employee, sued Galaxie for injuries he suffered on March 6, 2009, while operating a Herr Voss 17-Roll, 4-Hi Leveler ("Leveler") at Nanotec's facility in Lakeland, Florida. Specifically, Mendez-Garcia's hand and wrist were injured, and ultimately, his hand had to be amputated. (Doc. No. 2, p. 3.) Galaxie, a Michigan company that buys and sells used steel processing and coil handling equipment, sold

the Leveler to Nanotec on July 25, 2008.  Mendez-Garcia filed a one-count complaint for negligence against Galaxie, alleging that Galaxie breached the duty it owed Mendez-Garcia by "selling [the Leveler] without the guarding, interlocks and other safety equipment that was necessary for its safe operation; by failing to warn its customer and the end user of these defects; and by failing to provide any instructions on safety to its customer and the end user of the [Leveler]" and that those "breaches were a proximate cause of loss[,] injury and damage to [Mendez-Garcia]."  (Doc. 2, p. 3–4.)

After Mendez-Garcia sued Galaxie, Galaxie filed this third-party action against Nanotec for Breach of Contract, Negligence, and Common Law Indemnification/Contribution.[1]  (Doc. No. 26.)  Foremost, Galaxie sought indemnification pursuant to a contract provision entitled "Buyer Assumption of Risk and Indemnification of Seller" ("Assumption of Risk and Indemnification Provision" or "Provision") contained in the Supplementary Terms and Conditions of Sale, which was attached to the invoice that Galaxie gave to Nanotec when Nanotec purchased the Leveler.  That Assumption of Risk and Indemnification Provision states:

> **BUYER ASSUMPTION OF RISK AND INDEMNIFICATION OF SELLER**: Buyer assumes all risk and liability for loss, damage and/or injury to persons or property of Buyer or others arising out of the use or possession of any goods sold hereunder, and agrees to forever indemnify and hold Seller harmless from any and all costs, expenses and/or damages resulting thereby. Buyer hereby waives, releases, and discharges any and all claims (with the exception of claims for breach of this agreement) of any and every kind (including but not limited to injury or death of any person or damage to property), which it may have at any time against Seller, it's [sic] agents or employees, by reason of or arising out of any condition or defect of the goods sold hereunder, including but not limited to any

---

[1] Though pled differently, all of Galaxie's counts against Nanotec relate to what Galaxie maintains is Nanotec's duty to indemnify it.

> claims of negligence of Seller, improper design, specifications, or manufacturing defect of goods sold hereunder. Buyer further covenants to indemnify and hold-harmless Seller, it's [sic] agents and employees of, from, and against any and all loss, damage, expense, claims, suits, costs of defense, including attorney's fees or liability which Seller or any of its employees may sustain or incur at any time for or by reason of any injury to or death of any person or persons or damage to any property, arising out of any condition or defect of the goods sold hereunder, including but not limited to claimed improper design or manufacturing defect or other defect of the goods sold hereunder, or any claimed inadequate or insufficient safeguards or safety devices, or warning.

(Doc. 52, Ex. D, p. 3.)

Galaxie moves for summary judgment against Nanotec, arguing that the Parties entered into an enforceable sales contract, which is governed by Michigan law, and that the contract validly and unambiguously requires Nanotec to indemnify Galaxie against damages stemming from Galaxie's purported negligence that resulted in injury to Mendez-Garcia. Nanotec moves for summary judgment against Galaxie, contending that the Parties did not enter into an enforceable sales contract, that Florida law governs, and that (even if there were a contract) Nanotec has no obligation to indemnify Galaxie for Galaxie's own negligence because the Assumption of Risk and Indemnification Provision does not clearly and expressly state that Nanotec agrees to indemnify Galaxie for Galaxie's own wrongful acts.

## II.     Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by

reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.* Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1243 (11th Cir. 2001) (quotation omitted).

When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affirmative evidence, designate specific facts showing there is a genuine issue for trial. *Porter*, 461 F.3d at 1320. In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

**III.   Discussion**

    **A.   Breach of Contract/Contractual Indemnity**

The Parties disagree about whether an enforceable contract was formed and, if so, whether Florida or Michigan law governs. But even assuming that Galaxie is correct both that the parties entered into an enforceable contract, of which the Assumption of Risk and Indemnification Provision is a part, and that Michigan contract law controls, Galaxie's argument that it is entitled to contractual indemnification from Nanotec fails.

Under Michigan law, "a contract which purportedly indemnifies one against the consequences of his or her own negligence is subject to strict construction and will not be so construed unless it clearly appears that it was intended to cover the indemnitee's own negligence." *Powers v. APCOA Standard Parking, Inc.*, 259 F. Supp. 2d 606, 609 (E.D. Mich.

2003). "Also, indemnity contracts are construed most strictly against the party who drafts them and the indemnitee." *Id.* Indemnifying language will not insulate a party "from the consequences of his own negligent conduct unless it is clearly shown that the parties expressly agreed to this type of indemnification." *Id.* at 610 (quoting *Geurink v. Herlihy Mid-Continent Co.*, 146 N.W.2d 111, 113 (Mich. Ct. App. 1966)). Accordingly, unless indemnifying language clearly and unequivocally establishes that the parties intended to indemnify the indemnitee for his own negligence, it will not be so construed. *Id.* ("[U]nless the intention is unequivocally expressed in the plainest of words, the law will consider that the parties did not undertake to indemnify one against the consequences of his own negligence. . . . The purpose to impose this extraordinary liability on the Indemnitor must be spelled out in unmistakable terms.") (quoting *Batson-Cook Co. v. Indus. Steel Erectors*, 257 F.2d 410, 412, 413 (5th Cir. 1958)); *see also Meadows v. Depco Equip. Co. v. McLouth Steel Corp.*, 144 N.W.2d 844, 847 (Mich. Ct. App. 1966).[2]

Here, the Assumption of Risk and Indemnification Provision is set out in three sentences, found in Galaxie's Supplementary Terms and Conditions of Sale attached to the invoice. However, none of those sentences operate to shift the liability for Galaxie's own negligence from Galaxie to Nanotec.

The first sentence of the Assumption of Risk and Indemnification Provision states:

> Buyer assumes all risk and liability for loss, damage and/or injury to

---

[2] The Court notes that even if Florida contract law governed, the result would be the same: "[C]ontracts that attempt to indemnify a party against its own negligence are disfavored and will only be enforced if the contract clearly and expressly states that the indemnitee's own wrongful acts are indemnified." *Fidelity & Guar. Ins. Co. v. Ford Motor Co.*, 707 F. Supp. 2d 1300, 1313 (M.D. Fla. 2010).

> persons or property of Buyer or others arising out of the use or possession of any goods sold hereunder, and agrees to forever indemnify and hold Seller harmless from any and all costs, expenses and/or damages resulting thereby.

(Doc. 52, Ex. D, p. 3.) This sentence requires Nanotec to assume liability for, and to indemnify Galaxie from, any injury to persons or property arising from the use or possession of the Leveler. But because the sentence does not explicitly state that Nanotec agrees to indemnify Galaxie for Galaxie's own negligence, such an obligation cannot be imposed on Nanotec. *See Powers*, 259 F. Supp. 2d at 609–10.

The second sentence of the Assumption of Risk and Indemnification Provision states:

> **Buyer hereby waives, releases, and discharges any and all claims** (with the exception of claims for breach of this agreement) **of any and every kind** (including but not limited to injury or death of any person or damage to property), **which *it* may have at any time against Seller**, it's [sic] agents or employees, **by reason of or arising out of any condition or defect of the goods sold hereunder, including but not limited to any claims of negligence of Seller**, improper design, specifications, or manufacturing defect of goods sold hereunder.

(Doc. 52, Ex. D, p. 3) (emphasis added). This sentence provides that Nanotec agrees to waive any claim *it* may have against Galaxie for Galaxie's own negligence. However, this waiver is limited in two important respects. First, Nanotec waives only claims that *it* may have against Galaxie; Nanotec does not waive claims for negligence that *any other person* may have against Galaxie, including Mendez-Garcia. Second, though this sentence does explicitly mention Galaxie's own negligence, it serves only to *waive* claims Nanotec may have with respect to Galaxie's negligence; this sentence *does not* impose a duty on Nanotec to *indemnify* Galaxie for Galaxie's own negligence.

The third sentence of the Assumption of Risk and Indemnification Provision states:

6

> Buyer further covenants to indemnify and hold-harmless Seller, it's [sic] agents and employees of, from, and against any and all loss, damage, expense, claims, suits, costs of defense, including attorney's fees or liability which Seller or any of its employees may sustain or incur at any time for or by reason of any injury to or death of any person or persons or damage to any property, arising out of any condition or defect of the goods sold hereunder, including but not limited to claimed improper design or manufacturing defect or other defect of the goods sold hereunder, or any claimed inadequate or insufficient safeguards or safety devices, or warning.

(Doc. 52, Ex. D, p. 3.)  This sentence provides that Nanotec agrees to indemnify Galaxie for any and all claims of personal injury or property damage arising out of any condition or defect of the Leveler, including claimed improper design or manufacturing defect, claimed inadequate or insufficient safeguards, safety devices, or warnings.  Like the Provision's first sentence, this sentence does not expressly require Nanotec to indemnify Galaxie for Galaxie's own negligence; therefore, this sentence cannot operate to impose such an obligation on Nanotec.

Galaxie, as drafter of the Assumption of Risk and Indemnification Provision, understood how to avoid liability for its own negligence in certain circumstances because it did exactly that in the Provision's second sentence.  It could have included language stating that Nanotec agreed to indemnify Galaxie for Galaxie's own negligence in the other two sentences.  The burden was on Galaxie to use the appropriate language to draft an indemnification provision that covers its own negligence, and without such a provision, the Court cannot find that Nanotec has agreed to undertake such liability.  *See Liberty Mut. Ins. Co. v. Vanderbush Sheet Metal Co.*, 512 F. Supp. 1159, 1170 (E.D. Mich. 1981).

Because Mendez-Garcia has asserted a claim against Galaxie, in which he alleges that

Galaxie acted negligently, Galaxie cannot obtain contractual indemnity from Nanotec.[3] (Doc. Nos. 2, 72.) The only language in the Assumption of Risk and Indemnification Provision that explicitly covers claims for Galaxie's own negligence is in the second sentence and provides for *Nanotec's waiver* of any claims *it* may have against Galaxie for negligence. (Doc. 52, Ex. D, p. 3.) There is no clear or unequivocal language in the Provision indicating that Nanotec intended to **indemnify** Galaxie for Galaxie's own negligence to third parties. Therefore, even assuming, first, that the parties entered into an enforceable contract, of which the Assumption of Risk and Indemnification Provision is a part, and, second, that Michigan law applies, Nanotec has no duty under the Provision to indemnify Galaxie for any damages resulting from Mendez-Garcia's negligence claim.[4]

### B. Negligence and Common Law Contribution

In Count II, Galaxie asserts a claim for negligence, and alleges that Nanotec, through a number of its own acts and omissions, directly and proximately caused Mendez-Garcia's injuries. (Doc. No. 26, p. 8.) In Count III, Galaxie asserts a claim for common law contribution. (Doc. No. 26, p. 9–10.) Because these claims are related to each other and to Florida's comparative fault statute, Florida Statute § 768.81, the Court will address the claims together.

Under Florida law, "when two or more persons become jointly or severally liable in tort

---

[3] The Court directed Mendez-Garcia to clarify whether he was asserting a negligence claim or a strict products liability claim (Doc. No. 71), and Mendez-Garcia responded that he was asserting a negligent products liability claim against Galaxie (Doc. No. 72). As such, the Court interprets Mendez-Garcia's claim against Galaxie as being a claim that Galaxie, through its own acts or omissions, breached a duty it owed to Mendez-Garcia, *i.e.*, Mendez-Garcia is suing Galaxie for Galaxie's own negligent acts.

[4] The Court takes no position on whether or not Galaxie was, in fact, negligent and, therefore, liable for Mendez-Garcia's injuries; that issue is entirely for the jury to decide.

for the same injury to a person . . . , there is a right of contribution among them . . . ." Fla. Stat. § 768.31(2)(a). However, Florida's comparative fault statute provides that in negligence cases, "the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability." Fla. Stat. § 768.81(3); *T&S Enters. Handicap Accessibility, Inc. v. Wink Indus. Maint. & Repair, Inc.*, 11 So. 3d 411, 412 (Fla. 2d Dist. Ct. App. 2009). To allocate fault to a non-party, "a defendant must affirmatively plead this fault and prove it at trial 'by a preponderance of the evidence.'" *Wink*, 11 So. 3d at 412 (quoting Fla. Stat. § 768.81(3)(a) & (b)). Therefore, a defendant's allegations of a non-party's negligence should be pled in the form of an affirmative defense, and not alleged separately in a third-party complaint. *See* Fla. Stat. § 768.81(3)(a) & (b); *Wink*, 11 So. 3d at 412–13. Third-party claims for contribution are now essentially obsolete. *See Wink*, 11 So. 3d at 412–13; *Zazula v. Kimpton Hotels and Rests., LLC*, No. 10-21381, 2011 WL 1657872, at *2 (S.D. Fla. May 2, 2011).

    Galaxie's answer asserts the affirmative defense of Nanotec's negligence:

> The plaintiff's claims, injuries and damages, if any, were caused and barred by the actions, conduct and behavior of others over which this defendant has no control or right of control, including but not limited to the acts and/or omissions of Nanotec Metals, Inc., and its agents, parent companies, subsidiaries and/or holding company.

(Doc. No. 7, p. 5). Therefore, Galaxie has pled Nanotec's fault, may now attempt to prove Nanotec's fault by a preponderance of the evidence at trial, and may ask the jury to allocate fault for Mendez-Garcia's injuries accordingly. However, Galaxie's third-party claims against Nanotec for negligence and common law contribution are procedurally improper, and therefore, fail as a matter of law.

9

### C. Common Law Indemnity

In Count III, Galaxie also asserts a claim for common law indemnification. (Doc. No. 26, p. 9–10.) Galaxie alleges that because it is without fault, it would be entitled to common law indemnity from Nanotec in the event that the jury ultimately finds in favor of Mendez-Garcia on his negligence action. Under Florida law, a party seeking common law indemnity must satisfy a two-pronged test: (1) "the party seeking indemnification must be without fault, and its liability must be vicarious and solely for the wrong of another"; and (2) "indemnification can only come from a party who was at fault." *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 642 (Fla. 1999). In order for there to be vicarious liability, and thus a right for common law indemnity to exist, "Florida courts have required a special relationship between the parties." *See Id.* Therefore, Galaxie may obtain common law indemnification from Nanotec only if (1) Galaxie is, itself, wholly without fault; (2) Nanotec is found to be at fault; (3) a special relationship exists between Galaxie and Nanotec; and (4) Galaxie is found to be vicariously liable for Nanotec's wrongdoing. *See id.*

There are two flaws with Galaxie's argument that it is entitled to common law indemnification. First, Mendez-Garcia has alleged in its complaint that Galaxie ***is*** *at fault*. Specifically, Mendez-Garcia has alleged that Galaxie owed a duty of care to the users of the Leveler and that Galaxie breached that duty by "selling [the Leveler] without the guarding, interlocks and other safety equipment that was necessary for its safe operation; by failing to warn its customer and the end user of these defects; and by failing to provide any instructions on safety to its customer and the end user of the [Leveler]." (Doc. 2, p. 3–4.) If the jury ultimately finds in favor of Mendez-Garcia, it will, necessarily, have found that Galaxie was at fault. Such

a finding of fault would preclude Galaxie from recovering from Nanotec under common law indemnity. *See Houdaille Indus., Inc. v. Edwards*, 374 So. 2d 490, 493 (Fla. 1979) ("[Common law indemnity] is allowable only where the [w]hole fault is in the one against whom indemnity is sought. . . . Indemnity rests upon the fault of another which has been imputed to or constructively fastened upon the one seeking indemnity, and there can be no indemnity between joint tortfeasors."); *see also Fidelity & Guar. Ins. Co. v. Ford Motor Co.*, 707 F. Supp. 2d 1300, 1313 (M.D. Fla. 2010). Conversely, should the jury ultimately find Galaxie without fault for Mendez-Garcia's injuries, Galaxie's claim against Nanotec for common law indemnity would be rendered moot.

The second flaw in Galaxie's argument that it is entitled to common law indemnification is that Galaxie has not alleged a basis for its vicarious liability for Nanotec's negligence. This is not a scenario in which a seller is seeking indemnification up the chain of sale from a manufacturer in a strict product liability action.[5] Here, Galaxie — as the seller — is seeking indemnification from its buyer-customer, Nanotec. Moreover, because Galaxie has alleged Nanotec committed a series of negligent acts and/or omissions independent of Galaxie (most of which would have taken place after the sale of the Leveler to Nanotec was already completed), it is unclear how Galaxie contends it could be found vicariously liable for Nanotec's negligent acts — a required element for common law indemnity.

Because Mendez-Garcia has alleged that Galaxie — through its own negligent acts or omissions, is at fault for his injuries — and because Galaxie has not alleged a basis for Galaxie's

---

[5] One can be found liable under strict products liability even if he was "utterly non-negligent." *Moorman v. Amer. Safety Equip.*, 594 So. 2d 795, 800–01 (Fla. 4th Dist. App. 1992).

vicarious liability for Nanotec's negligence, Galaxie's claim for common law indemnification fails.

### IV. Conclusion

The Assumption of Risk and Indemnification Provision did not clearly and unequivocally state that Nanotec agreed to indemnify Galaxie against Galaxie's own negligence, and Mendez-Garcia's complaint alleges only a claim of negligence against Galaxie; therefore, Nanotec is not contractually required to indemnify Galaxie. Next, Galaxie's claims against Nanotec for negligence and common law contribution fail by operation of Florida Statute § 768.81(3). Finally, because Mendez-Garcia has alleged that Galaxie was negligent, *i.e.*, at fault, and because Galaxie has not alleged a basis for its vicarious liability for Nanotec's allegedly negligent acts, Galaxie's claim for common law indemnity fails.

Accordingly, Nanotec's Motion for Summary Judgment (Doc. No. 57) is **GRANTED**, and Galaxie's Motion for Partial Summary Judgment (Doc. No. 52) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 3rd day of November, 2011.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge